# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 9535 | DATE | 3/15/2004 |
| CASE TITLE | Manny vs. Central States | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court are Defendant's Motion for Summary Judgment [20-1] and Plaintiff's Cross-Motion for Summary Judgment [25-1]. Defendants' motion is granted; Plaintiff's motion is denied. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 17 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| ✔ | Docketing to mail notices. | | docketing deputy initials | 43 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | MAR 17 2004 date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY L. MANNY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 02 C 9535 |
| ) | HONORABLE CHARLES R. NORGLE |
| CENTRAL STATES, SOUTHEAST ) | |
| AND SOUTHWEST AREAS HEALTH ) | |
| AND WELFARE AND PENSION FUNDS ) | |
| AND BOARD OF TRUSTEES OF THE ) | |
| CENTRAL STATES, SOUTHEAST AND ) | |
| SOUTHWEST AREAS HEALTH AND ) | |
| WELFARE AND PENSION FUNDS ) | |
| Defendants. ) | |

MAR 1 7 2004

## ORDER AND OPINION

CHARLES R. NORGLE, District Judge:

Before the court are Defendants' Motion for Summary Judgment [20-1] and Plaintiff's Cross-Motion for Summary Judgment [25-1]. For the following the reasons, Defendants' motion is granted; Plaintiff's motion is denied.

### I. BACKGROUND[1]

This case involves claimed violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., arising out of Defendant's, Central States, Southeast and Southwest Areas Health and Welfare and Pension Funds ("Central States"), denial of a predetermination for coverage of gastric bypass surgery. Plaintiff, Terry L. Manny ("Manny"), is a member of the International Brotherhood of Teamsters, Local Union 705. Manny is a covered individual of the Central States Health and Welfare Fund based upon his enrollment by Stahly

---

[1] The court takes the facts from the parties Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

Cartage Company. He is employed by Stahly Cartage Co. which pursuant to a Teamster union contract requires that Stahly Cartage Co., pay health and welfare contributions to Central States for its covered Teamster employees. Manny is 58 years old, 6 feet 1 inches tall and weighs approximately 470 pounds. Manny claims his various health conditions are related to his weight. They include: type II diabetes, hypertension, osteoarthritis, chronic obstructive pulmonary disease, back pain, swelling in the legs and ankles, sleep apnea, and a 40% to 50% blockage to two arteries of his heart. Central States provides Manny with medical coverage pursuant to an ERISA-qualified Employee Health and Welfare Plan ("the Plan").

Manny is attempting to have gastric bypass surgery, for which he asserts the Plan should provide coverage. Manny asserts that gastric bypass surgery would allow him to drastically reduce his weight and thus alleviate his other related health problems. Central States asserts that gastric bypass surgery is designed only to reduce a person's weight, which is a cosmetic procedure specifically not covered under the health plan, and that any other health benefits derived are not a direct result of the surgery but rather incidental.

Manny applied for a predetermination as to whether the health plan would cover his gastric bypass surgery. Central States denied Manny's claim for gastric bypass surgery on February 12, 2002. On February 24, 2002, Manny appealed the denial of his predetermination. Central States denied Manny's appeal on May 15, 2002. On November 20, 2002, Manny again appealed his denial of predetermination. Central States officially denied Manny's third request for predetermination on November 27, 2002. After exhausting all administrative remedies, Manny filled this claim in the Federal Court. Both parties have moved for summary judgment and the issue is now ripe for ruling.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See, e.g., Navarro v. Fuji Heavy Industries. Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. See Fed. R. Civ. P. 56(c); Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); First Nat'l. Bank of

Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994) (citing Anderson, 477 U.S. at 249-50; 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 2712, at 574-78 (2d ed. 1983)).

Manny's only assertion is one for benefits under his ERISA plan. "A claim for benefits under an ERISA-governed plan 'is a matter of contract interpretation. When there are no triable issues of fact, we have held that contract interpretation is a subject particularly suited to disposition by summary judgement.'" Bechtold v. Physicians Health Plan of Northern Ind. Inc., 19 F.3d 322, 325 (7th Cir. 1994) (quoting Hickey v. A.E. Staley Mfg., 995 F.2d 1385, 1389 (7th Cir. 1993)).

### B. ERISA

ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," Shaw v. Delta Airlines, Inc., 463 U.S. 85, 90 (1983), and "to protect contractually defined benefits." Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985); see generally 29 U.S.C. § 1001 et seq. (setting forth congressional findings and declarations of policy regarding ERISA). ERISA requires "a 'full and fair' assessment of claims and a clear communication to the claimant of the 'specified reasons' for benefit denial." The Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 1967 (2003). ERISA provides "a panoply of remedial devises" for participants and beneficiaries of benefits plans. Firestone Tire and Rubber

Co. v. Brunch, 489 U.S. 101, 106 (1989) (citing Massachusetts Mutual Life Ins. Co., 473 U.S. at 146).

The Supreme Court held in Firestone that a "de novo standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." Firestone, 489 U.S. at 115 (citing Restatement (Second) of Trust § 187, Comment d (1959)). Further, the Seventh Circuit has stated "[t]he [Firestone] case makes plenary review the default rule, that is, the rule to govern when the plan documents contain no indication of the scope of judicial review; and it is a natural and modest extension of [Firestone], or perhaps merely a spelling out of an implication of it, to construe uncertain language concerning the scope of judicial review as favoring plenary review as well." Herzberger v. Standard Insurance Co., 205 F.3d 327, 330 (7th Cir. 2000); see also O'Reilly v. Hartford Life & Accident Ins. Co., 272 F.3d 955 (7th Cir. 2001). However "an ERISA plan can likewise specify that the administrator has discretion in interpreting or applying it . . . but the conferral of discretion is not to be assumed." Herzberger, 205 F.3d at 331. Discretion is only entitled when the language of the plan provides it. See id.; see also O'Reilly, 2001 WL 1518765, at *2.

The Seventh Circuit has suggested such "safe harbor" language that would assure that the administrator has sole discretion, however, such language is not mandatory nor can it be considered magic words. See Herzberger, 205 F.3d at 331 (The 'safe harbor' language suggested by the Seventh Circuit is the following: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them."). Rather, "in some cases the nature of the benefits or the conditions upon it will make reasonably clear that the plan administrator is to exercise

5

discretion." Herzberger, 205 F.3d at 331. "In others the plan will contain language that, while not so clear as our 'safe harbor' proposal, indicates with the requisite of minimum clarity that a discretionary determination is envisaged." Id. If the administrator does have discretion, then the court reviews the administrator's decision from the perspective of an arbitrary and capricious standard. See Id., at 331-32. Neither party disputes the fact that the Plan allows its administrator discretion to interpret the plan. Upon a review of the language of the Plan, the Court determines that the arbitrary and capricious standard applies for reviewing the denial of Manny's predetermination. Thus the Court will review the administrator's findings under that standard.

"Under the arbitrary and capricious standard, determinations will be overturned by the court only when they are 'unreasonable, and not [when] merely incorrect.'" Herzberger, 205 F.3d at 329 (7th Cir. 2000); see also James v. General Motors Corp., 230 F.3d 315, 317 (7th Cir. 2000) (stating a benefit determination will only be found arbitrary and capricious when "downright unreasonable"). To find that a decision was arbitrary and capricious, the court must first find that the decision-maker erred seriously in considering the evidence. Patterson v. Caterpillar, Inc., 70 F.3d 503, 505 (7th Cir. 1995). The court must ask whether the "decision was (1) without reason, (2) unsupported by substantial evidence, or (3) erroneous as a matter of law." Udoni v. Department Store Div. of Dayton Hudson Corp., 1996 U.S. Dist. LEXIS 8282, No. 94 C 3577, 1996 WL 332717, at *2 (N.D. Ill. June 13, 1996) (citation omitted). The court does not ask whether the court, a jury, or a different plan administrator would or could have granted the benefits; any questions of judgment are left to the plan administrator. Patterson, 70 F.3d at 505 n3. When considering a claim under the arbitrary and capricious standard, the court may refer only to that evidence which was before the decision

maker at the time of the denial at issue.² See Krawczyk v. Harnischfeger Corp., 41 F.3d 276, 279 (7th Cir. 1994). The court may not reweigh the evidence before the decision maker, it must only determine if the decision was reasonable. Chandler v. Underwriters Laboratories, 850 F. Supp. 728, 734 (N.D. Ill. 1994). Accordingly, the plan's decision "shall not be overturned . . . if it is possible to offer a reasoned explanation, based on the evidence, for the particular outcome." Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund, 900 F.2d 1138, 1142 (7th Cir. 1990) (citations omitted).

Manny asserts that the denial of his predetermination request for gastric bypass surgery was arbitrary and capricious. In furtherance of his assertion, Manny presents all of the correspondence between the two parties during the time in which his claim was pending and various letters from his doctors stating his medical necessity for the surgery and the benefits that he would incur from having it. Manny bases his assertion that Central States denial of coverage was arbitrary and capricious on essentially six arguments. Those arguments are: (1) his surgery would dramatically improve his medical conditions; (2) his surgery is not cosmetic, as Central States asserts, but a medical necessity; (3) his morbid obesity is an illness that requires treatment; (4) the Plan is contradictory because it provides treatment for other illnesses, such as alcoholism and drug addiction, but not gastric bypass surgery for the morbidly obese; (5) Central States failed to adequately review his petition, summarily denying his claims; and (6) the medical findings of Dr. Buckingham, Central States doctor, should be given no weight because he failed to physically examine Manny.

---

² Manny attempts to present a January 27, 2003, affidavit by Dr. Pennepalli and his own affidavit of August 11, 2003, in furtherance of his claims. As these statements were not before the plan administrator before the final denial of benefits was rendered, they are excluded.

Central States contends that its decision to deny benefits was not arbitrary and capricious. The Plan, which Central States is governed by, clearly denies benefits for gastric bypass surgery. The Plan states in Article IV, Section 4.08:

> A Covered Individual shall not be entitled to payment on a claim for benefits for any charge incurred for treatment or service in connection with a cosmetic procedure, even if performed for psychological reasons, unless the treatment or service is medically required as a result of an Accidental Bodily Injury incurred while a Covered Individual.
> This exclusion includes, but is not limited to"
> *(a) Any surgery primarily for obesity, including gastric bypass, gastric stapling, intestinal bypass . . . .*

Def. LR 56.1 ex. B at 25 (emphasis added).

Additionally, Central States sought the advice of Dr. Buckingham on the issue of Manny's necessity for the surgery. Dr. Buckingham reviewed the medical evidence submitted by Manny and determined that the proposed gastric bypass surgery would not cure any of Manny's other related health problems. The surgery, which is designed to reduce a person's weight, might have an affect on Manny's other health problems, but those results would only be secondary, or a by-product from Manny's weight loss. Dr. Buckingham determined that the result of the gastric by-pass surgery would be weight-loss, which is considered cosmetic and not covered by the plan.

Seeking independent expert advice is evidence of a thorough investigation, and reliance upon independent experts generally insulates the fiduciary from judicial reversal. See Hightshue, 135 F.3d at 1148; Donato v. Metropolitan Life Ins. Co., 19 F.3d 375, 380 (7th Cir. 1994) (holding that an insurance company made a permissible choice in relying upon independent medical consultant over claimant's physicians); Anderson v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local No. 12 Pension & Welfare Plans, 991 F.2d 356, 358 (7th Cir. 1993) (upholding a pension fund's denial of benefits where the fund relied upon an examination conducted by an independent orthopedic surgeon).

In this instance, Manny has failed to establish that Central States' denial of his request for predetermination of coverage regarding gastric bypass surgery was arbitrary and capricious. The

8

evidence shows that Central States reviewed Manny's claim and denied it, clearly notifying him that their reason for denial was that the Plan clearly denies coverage for gastric bypass surgery. After the initial denial, Manny appealed and Central States again denied his claim based on the written terms of the Plan. For the third and final appeal, Central States reviewed all of the documents submitted by Manny, the States Attorney General and Manny's doctors. Additionally, Central States had an independent physician, Dr. Buckingham, review all of Manny's medical records. Dr. Buckingham determined that the requested procedure, gastric bypass surgery, was not a medical necessity, because it is designed only to reduce a person's weight and any other medical affects would only be secondary or coincidental. Central States adopted Dr. Buckingham's finding that the surgery was not a medical necessity and, after looking at the explicit terms of the Plan, denied the third appeal.

Central States denied all three of Manny's requests for gastric bypass surgery, based their interpretation on both the written terms of the Plan and Dr. Buckingham's evaluation, and provided Manny with written notice as to the basis for each of their denials. The evidence of record indicates that Central States fully and fairly assessed Manny's claims and clearly communicated to Manny the specific reasons for their decision to deny benefits. See Nord, 123 S.Ct. at 1967. Manny has not disputed the way in which Central States determined to deny his benefits, only Central States' ultimate determination to deny the benefits. When reviewing the denial of benefits under ERISA, the Court should not impose its own belief as to whether or not the benefits should have been denied, but merely determine whether the process by which the administrator denied benefits was arbitrary and capricious. Clearly, Central States denial of benefits was not arbitrary and capricious in this

instance. Central States denied Manny's claims based on the explicit language of the Plan and a doctor's review of the record. Central States had substantial evidence to deny Manny's claim.

### III. CONCLUSION

For the foregoing reasons, Central States Motion for Summary Judgment is granted. Manny's cross motion for summary judgment is denied.

IT IS SO ORDERED

ENTER:

*Charles R Norgle*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 3-15-04